Please be seated, thank you. Clerk, please call the next case. 323-0002, the Village of Lisle, appellant by Michelle Norton v. Alex Aubrey French, appellee by Donald Ransdell. Ms. Norton, you may proceed. Thank you, Your Honor. Good morning. Morning. Good morning. My name is Michelle Moore Norton, N-O-R-T-O-N, on behalf of the Village of Lisle. And I'm honored to be here today, so I thank you for calling this before you. Actually, it was brought up on the course motion for oral argument as well as our request, so I thank you for that opportunity. One of the beautiful things about appellate practice, in my opinion, is that I can trust that the panel here has all read the pleading and is familiar with the record of the issues that are before you, so I'm going to try not to belabor what I believe I have comprehensively addressed in written form. I would like to address just a couple of the high points. We have a little bit of a hybrid situation here today, both in terms of the fact that we have the appeal that has brought us here, as well as a motion to dismiss that was brought by the appellee that was taken with the appeal. So I'm not quite sure how you want those addressed, but I think for practical purposes, it's important to address the motion to dismiss first. With all due respect to your colleagues in the second district, I believe they got it wrong in the City of Aurora v. Greenwood case in terms of whether or not 60481 permits interlocutory appeal by a municipal authority. I laid out the reasons for that comprehensively, I believe, in my response to that motion, and I would just like to kind of highlight a couple of the points there. With respect to the cases cited by the appellee in support of the motion to dismiss the appeal, I would note that the cases primarily were founded upon the precedent involved in the Bragg decision from 1967. That was sort of the foundational Supreme Court reference that was brought forward in the Aurora case, as well as the other cases that were cited. For the reasons that I outlined in my motion, I think that that was a somewhat myopic and anachronistic assessment of whether or not a municipal authority would, municipal powers are vested with the authority to pursue an interlocutory appeal in this type of situation. And the primary basis for that is because the Bragg decision was in 67 that predated the Illinois Constitution of 1970, which enacted by constitutional authority the right of municipalities to pursue home rule authority and home rule power. Following that constitutional convention and the changes in the state constitution, the municipality, the legislature rather, then enacted a number of different laws to support the right of the municipality to conduct affairs of the state essentially in the municipal context. So we see that in numerous state statutes. I combed through the Illinois compiled statutes and found reference at least in both the vehicle code, the Illinois Municipal Code, the Appellate Court Act, the Code of Criminal Procedure, and the Civil Practice Act, all of which sort of when taken together support the notion that municipal prosecutors would have the right to pursue an interlocutory appeal. We also then referenced People v. Young, which was an Illinois Supreme Court case from 1980 that talked extensively about the limits of Rule 604A1 in terms of bringing an interlocutory appeal. And I think that there was language in that opinion that supports the notion that it is the responsibility of our courts to entertain appeals where they are necessary and where they further the ends of justice. So, again, I don't want to belabor the points of what I've already put in writing, but the Supreme Court in Young talked about five specific bases to permit interlocutory appeals of suppression orders. And I'd like to just reference those. So the first is being to affect the orderly functioning of the judicial system. The second is to prevent a distorted development of the law in favor of criminal defendants. The third, to provide guidance to law enforcement officials as to proper standards for obtaining confessions or conducting searches and seizures. The fourth is to facilitate the coherent development of the law. And the fifth is to prevent frustration of the truth-seeking process. Were this court to adopt the position taken by the appellee in this case, I believe you would frustrate every single one of those very important purposes laid out by the Supreme Court in the Young decision. Beyond that, the statute on statutes and principles of statutory construction instruct us to, first and foremost, give effect to the intended and customary meaning of the words of the rule itself, not to add or delete words that are in the rule, and not to further absurd or unjust results. And I think that last one is perhaps the most important one, is that to read 604A1 so narrowly as to say that only the state can pursue an interlocutory appeal of an improper order-suppressing evidence would create an absurd or unjust result. Counsel, isn't that the way the Second, you would agree that the Second District has interpreted it that way? I would agree with that, and actually I think they added a word to the rule itself by saying only the state, because that's not what the rule says. They didn't substitute a word, though, correct? They didn't substitute a word, but they added only. Do you have any regrets about substituting the word prosecution for the word state? Candidly, it didn't occur to me as, I see those words as being interchangeable, and I think I referenced that frequently in the context of our court presentations. You will often hear defense attorneys refer to the government and what the government is doing in a case, whether it's the city, the state, the village, whatever it may be. Prosecution is often used interchangeably. I don't disagree with that at all, Counsel, but in this particular context, didn't the Second District use that difference to respond to other municipalities' requests to take these interlocutory appeals? I'm not sure I understand your question. That was the argument that was brought up before, wasn't it? Whether it's the state as opposed to the municipality. It was, and I think that whether the issue was not framed correctly for the court, whether it wasn't argued comprehensively, I don't know specifically what they did in that case to try to redirect the court's attention to, what does the phrase the state mean? I know that the opinion that was issued doesn't talk about the definition of terms and words in their common parlance. Do you think a better approach would have been to acknowledge that it says state and then to argue that it should be interpreted broader in the statement of jurisdiction? I suppose in retrospect, yes, but it didn't occur to me that the term the state as used in the rule was limited to just the state's attorney's office. And candidly, when I got the motion, when I received the motion, my first call was to a mentor of mine who's been in the appellate court, who's been on the Supreme Court. He had never heard of any such thing, but it sounded preposterous that a municipality couldn't pursue an appeal. My next call was to the supervisor of the appeals division at the state's attorney's office. Had never heard of such a thing. Couldn't believe that the rule would be interpreted that way or that it would preclude an appeal. I believe there are also a number of cases from the first district that suggest that municipal authorities can pursue appeals. The regard decision was one of them that involved an interlocutory appeal, and I cited that in my response as well. So when the statement of jurisdiction was brought or the authority for bringing the appeal, it wasn't with an intent to mislead or to distort my belief in terms of where jurisdiction was vested or why we had a right to pursue the appeal. So I don't think there was any kind of, I can tell you with absolute certainty, there was never an intent to deceive or mislead the court in terms of our ability to pursue an appeal. It just seemed natural. Beyond that, and I think the Aurora case addresses this as well, talks about the fact, well, how would the city then pursue an appeal? Because it's not, it's definitely a criminal case, so you can't use the rules of civil procedure to invoke jurisdiction, right? So they got to a point in that decision where they essentially said, you can't pursue an appeal here because of the precedence of the second district and the way that we're reading this rule. And if you were to apply that logic to this particular case, there is absolutely no avenue for relief that the municipality can take. There's none. There's no way to appeal an unjust or an improper ruling from a trial court in this context. In a laboratory, okay. Well, that's really the only kind of appeal that we could have on a criminal case, right? It's a prosecution, yes. Right. We can't appeal a finding of not guilty. That's not an option for us. So if you do that, you then preclude an entire category of litigants from seeking judicial redress in the appellate courts of the state. So you have to, you know, the language of the young opinion talks about, you know, you have to give, you can't narrowly read the rule to create an unjust or an absurd result. You just can't do it. And so if the only way that we can invoke appellate jurisdiction is by utilizing the rules for criminal appeals, it makes sense that we would have to say that 604A1 is the only way that we can bring this issue before the court. It's the only way we can do it. I would note as well, parenthetically, that at the time that cases like Brad and the like were considered, and even back in 1980, one of the cases was from 1980, I forget which one, there wasn't a lot of municipal prosecution being done, I don't think, 40 years ago, 50 years ago. Since the passage of the new constitution in 1970 and the inclusion of home rule, that has sort of developed. And in DuPage County, the majority of the municipalities prosecute their misdemeanor DUIs under the home rule authority. So you would ultimately be saying that there's a whole category of litigants that aren't allowed to pursue interlocutory appeals for what we believe to be incorrect or unjust rulings. So 604A is really the only way to go. I think there is ample support for that. So this all arose out of the ability of the state's attorney, provided by statute, to vest the municipality with the authority to prosecute a municipal ordinance violation or a state code violation, vehicle code violation. What's being prosecuted here? Well, the Village of Lyle has adopted the Illinois Vehicle Code. And so again, in my response, I laid out the interplay between the various statutory provisions that the legislature has permitted, as well as the home rule section of the, or article rather, of the constitution. There are a number of, you know, the Municipalities Act, I forget, I'm probably stating the name wrongly, but they allow for shared services and cooperative agreements between different levels of government, different agencies within the government. We know that, but the bottom line is we're dealing with this particular case, so that the village prosecuted a state statute violation, correct? That is correct. Okay, and they were only allowed to do that because the legislature had provided for the assignment of authority from the state's attorney to the village prosecutor? The adoption, correct. The adoption. The adoption of the vehicle code and the assignment of the prosecutor, correct. Correct. That's correct. So if we really wanted to clean all this up, it would be a legislative answer, wouldn't it? Could be, but it's pretty important. So you could do, quote, revesting, reassignment back to the state for appeals? I'm not sure, I don't know how that would work. It's called a statute. Oh, yeah. The reason you got the power in the first place was by statute. Correct. And I think, again, I would go back to my response to their motion to dismiss, where we talk about the definition of the different words that are used in the various statutes and the interplay between them. The vehicle code allows the municipality to adopt the vehicle code, right? So there's a provision in it that says you may adopt the vehicle code and prosecute violations. So, yeah, prosecute violations. So one reasonable interpretation is prosecuting them before a judge. A judge or a panel of justices, I would say. Well, is that right? Now we're talking appeal, aren't we? We are. That's my right. So, I mean, there is a problem here that needs to probably be corrected legislatively. Legislatively or by the Supreme Court itself in cleaning up the language of 604A1. Now, the Supreme Court did not take up the Aurora case on PLA. And I would note, as well, in that case, there was an alternative avenue for relief for the city there because the trial court judge said it was really kind of a venue issue for the trial court judge. He said, this happened in DuPage County. And my understanding of it was that it was in an unincorporated area of Aurora for which the Aurora Police Department had police jurisdiction, right, so they could make the arrest. They charged it under the local ordinance, even though it wasn't within the municipal confines, but it was in DuPage County. And so my understanding of that was that Judge Cruz, who was the trial court judge, said, well, you can refile it in DuPage County if you want to. And they elected to not do that. So they still had an avenue for some relief.  There's no avenue for relief. And I would like to, unless you have other questions about this particular issue that I didn't address in my written motion or my written response, I'd like to just at least address the underlying mind-boggling attack on the Fourth Amendment that I perceived happened in this case. I think it's really important to note some of the language used by the trial court judge in his ruling because it evidences either a conflation or a misunderstanding of the continuum and what actually happened in this case. I know that you have received not one, but actually two copies of the video that was recording the interaction between Sergeant Wise, who was then Officer Wise, and the defendant in this case. And it's a total of about 21 minutes, 22 minutes or so of videotape recording, the first six minutes of which constitute this community caretaking interaction. In the course of that community caretaking, Officer Wise made a number of specific observations about the defendant that, in his 22 years of experience, led him to believe that the defendant was under the influence of something. He indicated he couldn't smell an odor of alcohol, but as we all know, other things that could be impairing don't necessarily exhibit an odor. So odor is not the telltale silver bullet, so to speak, in a DUI investigation or an impaired driving investigation. Alcohol has an odor? Well, we all know that alcohol doesn't, but alcohol-based beverages often do. Okay, yeah, beverage, alcohol. Right. So he didn't smell an odor of an alcohol-based beverage initially, and his explanation for that was because the defendant had run out of gas, was apparently not situationally aware to realize that his tank was running low on fuel. About 200 to 100 yards from the, oh, my time is up. In any event, it's a continuum. We're asking the court to not conflate reasonable grounds with probable cause. If you look at the specific ruling given by the judge, he attached a requirement of probable cause to the Terry Stop phase of the interaction, and we believe that that was clearly an error. The officer wasn't required probable cause at that point. You'll have five minutes to reply. I shall return. Thank you, Your Honor. Mr. Ramsell, you may respond. Good morning, Your Honors, and may it please the Court. My name is Don Ramsell, and I represent the aggrieved party, Alex French. I may stand at this lectern alone, but I bring with me at least 55 years of one-sided precedent that states that a village ordinance and a village prosecution has no right to an interlocutory appeal, period. Everything else is flash. There is an absolute 100% difference between an ordinance prosecution and an ordinance violation and a state prosecution and a state violation. A good example of that discussion would be found in the case of Village of Palatine v. Regard, R-E-G-A-A-R-D, where the Illinois Supreme Court discussed the right of a village, under their adoption of the vehicle code as ordinances, to handle and prosecute DUI cases, most specifically summary suspensions. They lay out, in that opinion, the absolute 100% difference. What we have here is a prosecution of a village ordinance, period. It's not a hybrid. It's not, Your Honor, a state statute. If they had prosecuted this as a state statute, utilizing the Herman decision out of a third district, the body of the complaint would have alleged a violation of 625 ILCS 5-11-501, a statute that I have spent an entire career knowing backwards and forwards. But they did not do that here. That, Your Honor, would be where they would need permission of the state's attorney to prosecute a state statute. But what they did here was they adopted the vehicle code as their own ordinance. So this letter that they have from Bob Berlin does not grant them jurisdiction. The law in Illinois, even preceding Bragg, it's called the Bragg Doctrine. It's referenced that way. And this isn't just the second district ruling. There's cases in the first district, third district, fifth district, and second district. Tomorrow being the one-year anniversary of the most recent published decision reaffirming that a village has no right to an interlocutory appeal under 604. Now, I heard this prosecutor from the village say, talk about fairness. Well, interlocutory appeals, no one's entitled to as of right. If you wanted to talk about fairness, since the state has the right to appeal the granting of a motion to suppress interlocutorily, wouldn't it be fair for me to argue why is it the defendant doesn't have an interlocutory appeal right? If we're going to talk about leveling the playing field, and if we're talking about rewriting Supreme Court rules based on fairness, let's do it that the defense has the right to an interlocutory appeal. Because as far as I know, the only right to a fair trial I know of is for the defendant. Villages and government entities are not entitled to fair trials. The U.S. Constitution gives them nothing. It's all granted to the defense. But I don't need to go off on philosophy. Sometimes I do. I apologize for that. But let's talk more about the difference between an ordinance violation and a state statute. Why would the village want to adopt this as an ordinance? Money. Who gets the money? Follow the money. Because they get all the money. And the legislature said, in our dual sovereignty, which has existed for, I could go back 100 years. Counsel, is this relevant to the question? Yes. Because there's a big difference between prosecuting the state statute as... No, the money I'm talking about. Yes, the money does. Because if they accept it as a village ordinance, 100% of the fines go to the village. And that's their motivation for being here and their motion? You know, money is a motivation for many people. I can't speak to them. But what else would be the reason why? Lafave, in his treatise called Criminal Procedure, Section 1.8d, discusses village ordinances under this concept. And he points out money is a motivating factor. Another reason would be because if the village controls the prosecution, they can exercise some policy that their village wants to have. They want to be tough on drunk driving, would be an example here. Tough on speeding, whatever. The second reason is, if you look at a case called City of Wheaton v. LORC, L-O-E-R-O-P, unlike the vehicle code, which does not have a minimum fine, the fines under the state statute are zero to 2,500. But when a village adopts an ordinance, they can make the minimum fine 500, 1,000, 1,500. And I guarantee you, this village prosecutor makes sure the courts know that they have to impose that minimum fine under the village ordinance, because it's a village DUI, it's a village local ordinance. They get the minimum fine. City of Wheaton v. LORC said that even though the state statute does not have a minimum fine, villages, when they adopt DUI ordinances, are allowed to do so. It's not a conflict. It's just they can add to it. Rule 606. So, does the Supreme Court, oh, I should point out, City of Aurora v. Greenwood, the one-year anniversary tomorrow on that case, very well written, but a petition for leave to appeal was filed with the Supreme Court. The only issue was whether an ordinance, whether the village has the right to an interlocutory appeal, and the Supreme Court of Illinois let the decision stand. And as we know, even if Bragg is considered dicta in terms of the right to an interlocutory appeal, dicta is binding on all lower courts, including appellate courts. But after 55 years, is it a surprise that when it says the state, that it excludes the village? This isn't a surprise. This goes back longer than virtually every practicing attorney in the state of Illinois that I can think of. It's a well-established doctrine, so I am not alone. Rule 606 would be a good example, because we discussed these rules and how to read them in paramateria. Rule 606 also governing criminal appeals, just like Rule 604, very specifically differentiates in 606c, paragraph one, when defendant is appellant and action is prosecuted by the state. Paragraph two, when defendant is appellant and the action is prosecuted by a governmental entity other than the state. Paragraph three. Counsel, my apologies for the interruption. You're in Supreme Court Rule 606? Yes, 606. I only see one paragraph in 606c. It's entitled Perfection of Appeal. Yes. And I'm looking at, excuse me, e. Okay. My apologies. These glasses are fashionable, but not real good. But you can see that they separate out the difference between the state and other governmental entities. Do we need more? Are they compelled to have to accept leave to appeal in the city of Aurora versus Greenwood? Or is allowing the decision to stand supposed to mean what we think it means? Just like the legislature, when a court interprets a statute a certain way, and then they readdress that same statute and make no changes, it's their being to have accepted the interpretation of the courts on that statute. And it's no different with the Supreme Court. They can change the rules sua sponte. A recent case out of the Illinois Supreme Court, where there was a conflict in a DUI case about the admission of hospital records as business records under the statute when the Supreme Court rule did not allow for it. Hence, there was a conflict. The defense would win under most circumstances. And the Supreme Court said, we're just going to change our rule sua sponte to now allow the admission of hospital records. Therefore, the conflict between the statute and the rule never didn't exist. So it's presumed, not because they're infinitely intelligent, although I will grant them that, but it's presumed the Illinois Supreme Court's aware of all these rulings, and it wouldn't take much to change the word to prosecution. That's why, in my opinion, a motion for sanctions is appropriate. I'm sorry, but I'll use this word. I believe that there was an attempt to hornswaggle the defendants and the court by changing the verbiage when the village attorney got to the point where it was statement of jurisdiction. What would be the other reason? Why, I've never seen an appeal in 37 years of practice where someone changed the wording of the rule. And to suggest that a well-seasoned attorney was unaware of 55 plus years of precedent, including a case that's, I'm telling you, there's food that's expired quicker than that. It is befuddling, compelling the defendant in an ordinance violation to spend tens of thousands of dollars. You've seen my motion for sanctions. The itemization before the court said, you still have to write this brief, Mr. Ramsell, so here we are. And so this was taken in bad faith. And Ms. Norton did not, she was not candid. She was not up front. She didn't say, I've seen one-sided precedent that tells me I can't do this, and argued with candor that she would like to seek to overturn binding precedent. It was a latent attempt to sneak this before the court. And, Your Honor, only the Supreme Court can amend Rule 604. The statement of facts is so one-sided here, it's lopsided. It's totally lopsided. For example, just the claim that because Ms. Norton was ill and was trying to watch on Zoom, and there was no attorney there to hear the rulings of the judge. Well, if you take a look at the record on appeal, I don't have to testify to it myself, but the village attorney, Renee Ciesla, C-I-E-S-L-A, was present in the courtroom at that time. But the brief makes it look like this judge went ahead and did this and disregarded some technical defect. It's R-186, Renee Ciesla present for the ruling, but the brief suggests that this was done somehow underhandedly by the judge and by the defense, as if it was rushed through. I have to point out some things, because if you read the facts, statement of facts, which in my opinion uses italics, emphasis, bold, exaggeration, is argumentative, and one-sided, what does it miss? The statement of facts? There's no discussion of the cross-examination of the police officer. Take a look at the statement of facts again. There's nothing about the police officer being confronted and admitting that he did not perform the HGM test appropriately. There's nothing in the statement of facts by Ms. Norton that on cross-examination, the police officer admitted that red bloodshot eyes is no longer a cue of impairment. I don't know what the right word for it is. It's an antiquated, repeated, constantly repeated claim when the National Highway Traffic Safety Administration, this is in the record, in cross, said you can't use that. There's too many seasoned workers, cyclical workers, people that work midnight shifts like police officers, that all have these red glassy eyes, and every human being has glassy eyes. The viscous on your eyeballs means you're alive. It doesn't mean you're drunk. What else is missing from the village brief? The concept that the officer retained the driver's license of the defendant throughout the interaction, brought up on cross, that he, Wise said that the defendant was no longer free to leave, brought up on cross. Wise ran Mr. French's license, found there was no outstanding warrants for other problems. He performed a warrant check. These are irrelevant to seizure, but were conveniently left out of a statement of facts, which is supposed to be like a newspaper article. You give the who, what, where, when, and how. You leave your argument for the later part of the brief. What else is missing? What I mentioned about the water on the eyes, the NHTSA manual. How about this? Officer Wise admitted that he has to hold his finger out. I'm sorry, can I finish this one, please? Hold his finger out for a minimum of four seconds on the HGM test, and when confronted with the video, refused to admit the timer on the video was accurate. I could go on, but I think you get the gist of it, and I want to thank you. I've got to say, it's probably the most ornate courtroom I've seen since Washington, D.C. I love it. Thank you. Thank you. Glad you're here. Thank you. Counsel, you may reply. Thank you. I was submitted to the court, but one of the reasons Mr. Ramzall wants to talk about fines and things of that nature is because he doesn't want to talk about the actual facts of the case. As I started to mention earlier, the trial court judge in his ultimate ruling, I'm compelled to comment on the court's conduct of the ruling. The hearing, as you are aware, took place partially by the stipulation of a transcript that was originally generated pursuant to a summer suspension proceeding. There was some supplemental testimony that was received, I believe, in November 9, 2022, and the court deferred ruling until December 7. So he heard arguments. He was given a fully briefed written response to the defendant's motion. There were a number of objections that were made to the motion itself in terms of not complying with Franks, not complying with the statute and the code of criminal procedure that requires a motion challenging a search warrant to recite facts specifying in what manner the search warrant is defective. Mr. Ramzall kind of glosses over that. He doesn't even mention it, in fact, that we objected repeatedly to the actual written motion that he filed in terms of whether or not it reached the search warrant itself. But on December 7, when I was home sick with COVID and not able to physically go to the courthouse, there was a Zoom proceeding that was taking place. The court took a break to do a 402 conference, turned off his camera, turned off his microphone, came back, and the next thing I know, I'm getting text messages. And I was on the Zoom the whole time getting text messages from the courtroom clerk and my colleague who was in the courtroom who was just covering kind of at the last minute because I was sick. She had not briefed the case. She had not participated in any measure or any step of the way in the hearing. And she wasn't there to voice any kind of position by the village because she simply wasn't familiar with the case. So the fact that Ms. Ciesla was present in the courtroom doesn't mitigate the fact that the attorney who was responsible for this case, who had been on it every step of the way, every stage of the proceedings, was sick and not able to be there. The court never reactivated his camera or his microphone. I couldn't hear the ruling. The order that was entered was pretty vague in terms of what actually was suppressed. And we had to ultimately order the transcripts and bring it back before the court's attention. On that December 7th date when I wasn't there, the court preliminarily said, why don't we give this a continuance so Ms. Norton can be here? And my opposing counsel over there objected. He wanted it heard that day. And for whatever reason, the mic wasn't on, the camera wasn't on. We weren't present. The village was essentially not really represented at that time. We bring all of the errors of the court's ruling to the court's attention. And when we come back on January 4th, the court admitted that he, again, conflated in his ruling the timeline and the differentiation between what happens at the Terry stage of an investigation, what happens when you develop probable cause. He was conflating the reasonable articulable suspicion with probable cause. He didn't have any awareness. And he acknowledged that he hadn't even looked at the search warrant. What Mr. Ramsdell has done in this case is apparently he found a soft target with our trial court judge who was willing to say that the Fourth Amendment doesn't matter, the rules of procedure don't matter, France versus Delaware doesn't matter, we're going to upend all of that, and I'm going to, as the trial court, I'm going to engage in a hyper-technical analysis of what this experienced police officer of 22 years did on the street in the first eight minutes, six minutes of which were actual contact with the defendant. The Fourth Amendment prohibits unreasonable searches and seizures. That has been the law of this land since the Bill of Rights were appended to the Constitution. The Fourth Amendment requires reasonableness. Everything the officer did in this case was reasonable. The search warrant, what was done in terms of the trial court's addressing of the search warrant, was completely erroneous and, again, in contravention of settled precedent in this state, in this country, on the Fourth Amendment. He talks about fines because he doesn't want to talk about the facts. I'm begging your honors to reverse the erroneous orders of the trial court in this case. And, again, it was mind-boggling the way that this case was handled. It was mind-boggling the fact that the court just completely disregarded case law and precedent that was provided to him in terms of what his obligation was in assessing the reasonableness of the officer's conduct. He was not to engage in a hyper-technical analysis of what the officer did on the street, but he was to review it in the context of what was reasonable and appropriate for the officer to confront him with those circumstances on the date and time of his encounter with the defendant. This case should be reversed. It is an affront to the Fourth Amendment, and I would submit to the court as well that with respect to the motion to dismiss, the Supreme Court, in not taking the Aurora case, has given this court an opportunity to right a wrong and to give us a split of decisions. The Second District's decision, while it may be something that this court considered, it's not binding on this court, and I think that there is ample Supreme Court precedent that talks about the fact that municipalities have a right to stand in the shoes of the state to pursue an interlocutory appeal. This is a criminal case all day long. It's a Class A misdemeanor. Maximum penalties are the same whether it's prosecuted by a municipal authority or the state. My time is up. I thank you very much for your time. I hope you have a nice holiday, and I can't wait to hear from you. Any questions? Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue.